# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

JEFF HARTLEY,

           Plaintiff,

v.                                               CIVIL ACTION NO. 3:17-0619

21ST MORTGAGE CORPORATION,

           Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are three motions: (1) Defendant 21st Mortgage Corporation's Motion to Dismiss (ECF No. 16); (2) Defendant 21st Mortgage Corporation's Motion to Stay (ECF No. 31); and (3) Plaintiff's Motion to Compel Deposition and Extend the Deadlines. ECF No. 35. For the following reasons, the Court **GRANTS, in part,** and **DENIES, in part,** the Motion to Dismiss, **DENIES WITHOUT PREJUDICE** Defendant's Motion to Stay, and **DENIES AS MOOT** Plaintiff's Motion to Compel Depositions and Extend the Deadlines.

## I.
## FACTUAL AND
## PROCEDURAL HISTORY

This action originally was filed in the Circuit Court of Putnam County, West Virginia on February 25, 2016, alleging violations of various state laws regarding the collection of a debt. On January 11, 2017, Plaintiff filed an Amended Complaint, which added a federal claim under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, and a violation of a bankruptcy stay and discharge. Thereafter, Defendant timely removed the action to this Court based upon federal question jurisdiction. 28 U.S.C. § 1331.

On February 6, 2017, Plaintiff filed a Second Amended Complaint. In his Second Amended Complaint, Plaintiff states that he fell behind on payments on a loan that originated as a mortgage loan with Chase Mortgage. On April 19, 2001, Plaintiff filed for Chapter 7 bankruptcy, and his personal liability for the debt was discharged on August 10, 2001.[1] Plaintiff alleges that three or four years after the discharge, the loan was transferred from Chase Mortgage to Defendant 21st Mortgage Corporation. Thereafter, Plaintiff and his wife divorced, and she received the house and the accompanying mortgage as part of a property settlement agreement. Plaintiff states that, although he told Defendant he no longer resided in the house and his debt was discharged, Defendant began a relentless campaign of calling him. Plaintiff asserts he withdrew his consent for Defendant to contact him.

In May 2015, Plaintiff states he began receiving written communications attempting to collect the debt. Thereafter, Plaintiff asserts he mailed Defendant a letter stating he retained an attorney, and he provided Defendant with his attorney's contact information. According to Plaintiff, Defendant continued to call him and left messages demanding payments without disclosing its name. These telephone calls included unauthorized calls to his cellphone. Plaintiff alleges he was called multiple times a day from what he believes was an "Automatic Telephone Dialing System." Plaintiff alleges Defendant called him in excess of 300 times.[2] *Sec. Am. Compl.*, at ¶ 45.

---

[1]Plaintiff's bankruptcy case closed on September 28, 2001.

[2]In his Response to Defendant's Motion to Dismiss, Plaintiff states he received more than 350 calls from Defendant after his obligation on the debt was discharged.

Based upon these allegations, Plaintiff alleges seven claims against Defendant: (1) Violations of the West Virginia Consumer Credit and Protection (WVCCPA) (Count 1); (2) Violation of the West Virginia Consumer Computer Crime and Abuse Act (WVCCAA) (Count II); (3) Violation of the Telephone Harassment Statute (Count III); (4) Negligence (Count IV); (5) Invasion of Privacy (Count V); (6) Violation of the Automatic Stay and Discharge (Count VI); and (7) Violations of the TCPA (Count VII). In its motion, Defendant argues that all Plaintiff's claims, other than the TCPA claim, should be dismissed.

## II.
## STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court

reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

## III.
## DISCUSSION

### A.
### Whether Plaintiff qualifies as a consumer under the WVCCPA?

Defendant first argues that Plaintiff's claim under the WVCCPA must be dismissed because Plaintiff no longer qualifies as a "consumer" under the Act and, therefore, lacks standing to bring a claim.[3] The WVCCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." W. Va. Code § 46A-2-122(a). Defendant argues that, although the debt still exists, Plaintiff is no longer obligated to pay because his personal liability was discharged in bankruptcy. Thus, Defendant insists Plaintiff does not meet the definition of a "consumer." In support, Defendant cites *Fabian v. Home Loan Center, Inc.*, No. 5:14-CV-42, 2014 WL 1648289 (N.D. W. Va. Apr. 24, 2014).

As here, the lender in *Fabian* argued that the plaintiffs could not bring a claim of unconscionability under the WVCCPA because their personal obligation to pay a debt was discharged in bankruptcy. 2014 WL 1648289, at *5. The plaintiffs argued they qualified as "consumers" under the Act because they remained "allegedly obligated" to pay the debt to avoid foreclosure on their house. However, the court disagreed and held that the plaintiffs' choice to make payments so they could retain their house "does not give rise to an 'alleged obligation.'" *Id*. (citation omitted). In making this holding, the court distinguished the facts before it from *Croye v. GreenPoint Mortgage Funding, Inc.*, 740 F. Supp. 2d 788 (S.D. W. Va. 2010).

In *Croye*, the plaintiffs alleged, inter alia, violations of the WVCCPA by the servicer of mortgage loans obtained by Cheryl Croye. The servicer sought summary judgment against William Croye because he did not execute the loans and, therefore, the servicer argued he

---

[3]The WVCCPA grants a private cause of action to a "consumer" against a creditor who violates the act. W. Va. Code § 46A-5-101(1).

did not qualify as a "consumer" as he had no obligation to pay the debts. 740 F. Supp. 2d at 796.[4] In rejecting this argument, the court cited Mr. Croye's claim that the servicer telephoned him more than thirty times to collect on the mortgages. *Id*. at 797. The court held that the servicer's "repeated efforts to collect payment from him suggest the existence of an alleged obligation of Mr. Croye to pay the loans." *Id*.

In *Fabian*, the court considered *Croye* and concluded that "[t]he phrase 'alleged obligation' extends the reach of the Act to certain collection activities conducted without regard to whether the debt is actually owed—as in *Croye*, where the lender repeatedly asserted that the debtor was *required* to pay the debt although the debtor had no personal obligation[.]" 2014 WL 1648289, at *6 (italics original; agreeing with the analysis in *Ballard v. Bank of America, N.A.*, No. 2:12-2496, 2013 WL 5963068 (S.D. W. Va. Nov. 7. 2013)). However, the *Fabian* court found this fact made *Croye* inapposite to the circumstances before it because the plaintiffs in *Fabian* never alleged that the defendants represented to them that they remained personally liable to pay the debt. Thus, the *Fabian* court found the plaintiffs were not "consumers" under the Act. *Id*; *see also Hanshaw v. Wells Fargo Bank, N.A.*, No. 2:14-cv-28042, 2015 WL 5345439, at *14-15 (S.D. W. Va. Sept. 11, 2015) (finding the plaintiffs lacked standing as a "consumer" under the WVCCPA where their obligation on the debt was discharged in bankruptcy and the complaint was devoid of allegations that the defendants attempted to recover the debt following the bankruptcy or that the defendants indicated to the plaintiffs they were personally obliged to repay the debt).

---

[4]Cheryl and William Croye were married when the loans were obtained, but later divorced and Ms. Croye moved out of the house. *Id*. at 791-92.

In this case, Defendant insists, as in *Fabian*, Plaintiff lacks standing under the WVCCPA because his debt was discharged and Plaintiff has not alleged in the Second Amended Complaint that Defendant indicated to Plaintiff that he remained "personally" liable to pay the loan after the discharge. On the other hand, Plaintiff argues this case is similar to *Croye*. Specifically, Plaintiff points to the fact that the court in *Croye* stated that the servicer's more than thirty phone calls attempting to collect on the debt "suggest[s] the existence of an alleged obligation of Mr. Croye to pay the loans." 740 F. Supp. 2d at 797. Upon review, the Court agrees with Plaintiff.

Here, Plaintiff alleges he received over 300 phone calls, which is many more times than that alleged in *Croye*. *Sec. Am. Compl.*, at ¶45. In addition, Plaintiff asserts that Defendant called him "at his home, work and cell phone . . . [and] Plaintiff explained that he had discharged the debt and withdrew his consent to be contacted." *Id.*, at ¶12. He also claims that "[u]pon information and belief Defendant left messages for Plaintiff with demands for payment without clearly disclosing the name of the Defendant." *Id.* at ¶18. He further states that, after his bankruptcy discharge, he received written communications to collect on the debt. *Id.* at ¶13. Considering all these allegations in the light most favorable to Plaintiff and drawing any reasonable inferences to be drawn therefrom, the Court has no difficulty finding Plaintiff has stated a plausible claim he is a "consumer" under the WVCCPA because Defendant's alleged collection actions may suggest the existence of a personal obligation to pay the debt. *See Adkins v. Credit Acceptance Corp.*, No. 2:16-cv-03343, 2016 WL 7451619, at *3 (S.D. W. Va. Dec. 28, 2016) (finding, although the plaintiff owed no debt to the defendant, she pled a plausible WVCCPA claim because case law "establish[es] that a creditor's actions alone are sufficient to give rise to an 'alleged obligation' to

pay a debt, so long [as] there is evidence of an attempt to hold the plaintiff personally liable"). Whether or not Plaintiff ultimately can prove Defendant's actions created an "alleged obligation" is a matter best reserved to decide following discovery. Therefore, the Court **DENIES** Defendant's motion to dismiss Count I.

### B.
### West Virginia's Computer Crime
### and Abuse Act

Defendant next argues that Plaintiff's claim that it violated the West Virginia Computer Crimes and Abuse Act (WVCCAA), W. Va. Code § 61-3C-14a, should be dismissed because Plaintiff has failed to allege a violation of the Act. The WVCCAA provides, in part, that "[i]t is unlawful for any person, with the intent to harass or abuse another person, to use a computer, mobile phone, personal digital assistant or other electronic communication device to . . . [m]ake contact with a person after being requested by the person to desist from contacting them[.]" W. Va. Code § 61-3C-14a(a)(2), in part.[5] An "electronic communication device" is defined under the statute as

> a telephone, wireless phone, computer, pager or any other electronic or wireless device which is capable of transmitting a document, image, voice, e-mail or text message using such device in an electronic, digital or analog form from one person or location so it may be viewed or received by another person or persons at other locations.

W. Va. Code § 61-3C-14a(b)(1). In addition, the statute provides that the "[u]se of a computer, mobile phone, personal digital assistant or other electronic communication device" as:

> includ[ing], *but not limited to*, the transmission of text messages, electronic mail, photographs, videos, images or other nonvoice data by means of an electronic communication system, and includes the

---

[5]The proviso to subsection (2) states "[t]hat a communication made by a lender or debt collector to a consumer, regarding an overdue debt of the consumer that does not violate chapter forty-six-a of this code, does not violate this subsection[.]" *Id.*

-8-

> transmission of such data, documents, messages and images to another's computer, e-mail account, mobile phone, personal digital assistant or other electronic communication device.

W. Va. Code § 61-3C-14a(b)(2).

Defendant argues the phrase "or other nonvoice data" establishes that this statute only applies to "nonvoice" communications and Plaintiff has failed to allege that Defendant attempted to contact him using an electronic device transmitting "nonvoice data." However, not only does Defendant fail to cite a single case in support of its position, it completely ignores the "includ[ing], but not limited to" language in the statute. When this significant qualifier is read as part of the statute, Defendant's "plain language" argument falls short. In fact, as an "electronic communication device" is defined, inter alia, as a "telephone . . . which is capable of transmitting . . . voice . . . using such device in an electronic, digital or analog form from one person . . . so it may be . . . received by another person or persons," W. Va. Code § 61-3C-14a(b)(1), it appears clear to the Court that a telephone call may meet the definition of the WVCCPA. Otherwise, the use of the word "telephone," which is listed in addition to "wireless phone," becomes meaningless because a standard, non-wireless telephone, generally does not send "text messages, electronic mail, photographs, videos, images or other nonvoice data." W. Va. Code § 61-3C-14a(b)(2). *See PSINet, Inc. v. Chapman*, 362 F.3d 227, 232 (4th Cir. 2004) ("General principles of statutory construction require a court to construe all parts to have meaning and to reject constructions that render a term redundant." (citations omitted)). Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiff's WVCCAA claim.

## C.
## No private cause of action for violations of the West Virginia Telephone Harassment Statute

Defendant next argues that there is no private cause of action for violations of the West Virginia Telephone Harassment Statute so Plaintiff's claim must be dismissed. The statute makes it "unlawful for a person with the intent to harass or abuse another by means of telephone to . . . [m]ake or cause the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number." W. Va. Code § 61-8-16(a)(3). However, as this Court stated in *Carroll v. USAA Savings Bank*, No. 3:16-11120, 2017 WL 811491 (S.D. W. Va. Mar. 1, 2017), "[t]he case law is clear that a plaintiff has no private civil right of action under the Telephone Harassment Statute, a criminal statute, because the state legislature created the WVCCPA to account for civil litigation." 2017 WL 811491, at *2 (citations omitted). As in *Carroll*, Plaintiff here argues that it is premature to rule on the motion because Defendant has not admitted it is a "debt collector" or that Plaintiff is a "consumer" to make the WVCCPA applicable. In *Carroll*, the Court rejected this argument as irrelevant, stating

> [w]hether Plaintiff has a successful WVCCPA claim against Defendant does not change the inapplicability of the Telephone Harassment Statute to a civil case. The West Virginia legislature intentionally created a separate civil mechanism for plaintiffs to bring suit against defendants issuing harassing phone calls. A claim asserting a violation of this criminal statute that punishes the same conduct fails as a matter of law.

*Id*. The same reasoning applies in this case. Therefore, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's claim under the Telephone Harassment Statute.

**D.**
**Negligence**

In Count IV, Plaintiff alleges that Defendant was negligent because it "failed to train, supervise, monitor or otherwise control its employees to ensure that its employees did not violate the seclusion of Plaintiff's home." *Sec. Am. Compl.*, at ¶40. As a result, Plaintiff claims that he was "annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and

-10-

otherwise was caused indignation and distress." *Id*. at ¶41. Defendant argues this claim must be dismissed.

In *Carroll*, this Court explained that "West Virginia does not recognize a claim for negligent training or supervision without an underlying claim for employee negligence. If a complaint fails to identify an employee's negligent act, the claim for negligent training or supervision should be dismissed as a matter of law." 2017 WL 811491, at *3 (citations omitted). In *Carroll*, the plaintiff alleged the defendant bank failed to supervise and train its employees to prevent violations of the WVCCPA. However, the plaintiff failed to make separate allegations that employees were negligent, and this Court rejected the plaintiff's argument that employee negligence existed because he continued to be called after it was known he was represented by counsel. *Id*. Upon review of the plaintiff's Third Amended Complaint, this Court found there was no underlying employee negligence claims. Instead, the plaintiff's allegations of harassment and annoyance involved intentional conduct. Therefore, the Court found the plaintiff's negligent supervision claim failed as a matter of law. *Id*.

As in *Carroll*, Plaintiff in this case has not alleged any employee was negligent. Rather, Plaintiff alleges intentional conduct on the part of Defendant by harassing him to collect a debt that was discharged in bankruptcy. Without an underlying claim for employee negligence, however, Plaintiff's claim of negligent training and supervision cannot survive as a matter of law. Thus, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's claim for negligence.

**E.
Invasion of Privacy**

Next, Plaintiff alleges that Defendant has violated his right to privacy by calling him over 300 times and causing him, inter alia, emotional distress, annoyance, and inconvenience. West Virginia recognizes an invasion of privacy for "an unreasonable intrusion upon the seclusion of another[.]" *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 85 (W. Va. 1983). An "[u]nreasonable intrusion upon another's seclusion occurs when '[o]ne . . . intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person.'" *Harbolt v. Steel of W. Va., Inc.*, 640 F. Supp. 2d 803, 817 (S.D. W. Va. 2009) (quoting Rest. (Second) of Torts § 652B (1977)). Defendant argues, however, that Plaintiff's claim is facially deficient because Plaintiff does not allege the telephone calls would be highly offensive to a reasonable person and his claim rests on the same allegation made for his WVCCPA claim.

In considering these arguments, the Court first finds that Plaintiff's allegation Defendant telephoned him over 300 times is sufficient to state a plausible claim that the conduct would be considered highly offense to a reasonable person. Second, in *Baldwin v. Wells Fargo Financial National Bank*, No. 3:16-4841, 2017 WL 63026 (S.D. W. Va. Jan. 5, 2017), this Court recently denied a similar motion to dismiss where the plaintiffs alleged that the defendant made a large number of phone calls to them after learning they were represented by counsel. As a result of the calls, the plaintiffs asserted they suffered emotional distress and felt threatened and harassed. This Court denied dismissing the plaintiffs' invasion of privacy claim finding that, "[a]lthough Plaintiffs' complaint tracks some of the language of the . . . [WVCCPA], the factual allegations state a plausible claim for invasion of privacy on its own." 2017 WL 63026, at *4. Relying upon *Baldwin*, this Court in *Carroll* also denied a motion to dismiss an invasion of privacy claim where

there was an allegation that the defendant called the plaintiff at least forty-one times after being notified the plaintiff had counsel. 2017 WL 811491, at *4. As the allegations in this case are similar to both *Baldwin* and *Carroll*, the Court finds no reason to deviate from these holdings. Therefore, the Court **DENIES** Defendant's motion to dismiss Plaintiff's invasion of privacy claim. *See also Huffman v. Branch Banking & Trust Co.*, No. 3:16-8637, 2017 WL 2177351, *7 (S.D. W. Va. May 17, 2017) (stating "[t]his Court has recognized that a plaintiff can successfully plead a plausible claim for invasion of privacy when experiencing harassing phone calls" (citing *Carroll*, 2017 WL 811491, at *4)).

## F.
## Bankruptcy

In Count VI, Plaintiff alleges that Defendant's actions violated the automatic bankruptcy stay, 11 U.S.C. § 362, and the subsequent discharge. *See* 11 U.S.C. § 524(a)(2) (providing, that the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived"). Initially, the Court finds Defendant's actions could not have violated the automatic stay because Plaintiff states his debt was discharged before the loan was transferred to Defendant. *See* 11 U.S.C. 362(c)(2) (providing "the stay of any other act under subsection (a) of this section continues until the earliest of--(A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under chapter 7 of this title concerning an individual . . . the time a discharge is granted"). Thus, the stay ended prior to any actions taken by Defendant. However, Defendant's actions did occur after Plaintiff's personal obligation to pay on the loan was extinguished. In the Second Amended Complaint, Plaintiff specifically requests that Defendant "be held in contempt by this Court" for failing to abide by the discharge. *Sec. Am. Compl.*, at ¶52. In its motion, Defendant

argues Plaintiff's claim must be dismissed because there is no private right of action for violating a discharge order.

As the bankruptcy court recently said in *In re Adkins*, 555 B.R. 541 (Bankr. S.D. W. Va. 2016), many courts have "conclude[d] that no private right of action exists under [11 U.S.C.] § 524." 555 B.R. at 546 (citations omitted); *see also In re John*ston, 362 B.R. 730, 739 (Bankr. N.D. W. Va. 2007) ("The recognition of a private right of action requires affirmative evidence of Congressional intent in the statute, or in its legislative history. No evidence is present in § 524's legislative history to indicate the Congress intended to provide debtors with a private right of action." (citation omitted)). This Court agrees with that position. Nevertheless, a court may find a defendant that violates a discharge injunction made pursuant to § 524 in contempt under its inherent authority under § 105.[6] *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450 F.3d 996, 1007 (9th Cir. 2005) ("A party who knowingly violates the discharge injunction can be held in contempt under section 105(a) of the bankruptcy code." (citations omitted)); *In re Flint*, 557 B.R. 461, 465 (Bankr. N.D. W. Va. 2016) (stating "a violation of the discharge injunction is punished by contempt of court" (citations omitted)); *In re Burch*, No. ADV 11-80030-DD, 2011 WL 3207083, at *3 (Bankr. D.S.C. July 26, 2011) ("While there is no private right of action for a violation of the discharge injunction, a court may hold a violating creditor in contempt of court and award sanctions against the creditor in order to compensate the debtor for the creditor's conduct." (citations omitted)).

---

[6] Section 105(a) provides, in part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a), in part.

Defendant argues, in part, that Plaintiff's claim for contempt should be dismissed as inadequately pled because he does not ask for contempt in his final request for relief. The Court rejects this argument. Plaintiff specifically requests that Defendant "be held in contempt by this Court" in Count VI. Such allegation is clearly sufficient. If the claim survives, Defendant further asserts it is more properly before the bankruptcy court, rather than this Court, because the bankruptcy court issued the discharge order. Upon consideration, the Court agrees.

Although the parties have not cited any Fourth Circuit decisions directly addressing the issue, and this Court has not found any, the Court agrees with those courts concluding that claims alleging violations of a discharge order should be brought before the bankruptcy court that issued the order. As the Honorable Richard Posner stated in *Cox v. Zale Delaware, Inc.,* 239 F.3d 910 (7th Cir. 2001), "affirmative relief can be sought only in the bankruptcy court that issued the discharge. In such a case the proper procedure would indeed be to reopen the bankruptcy proceeding, since the debtor would be seeking to enforce the order of discharge issued in that proceeding." 239 F.3d at 917. Judge Posner explained that "[a] court retains jurisdiction to enforce its injunctions" and the issuing court is better able to decide "the alleged violation, assess its gravity, and on the basis of that assessment formulate a proper remedy." 239 F.3d at 916-17. *See also Jones v. CitiMortgage, Inc.*, 666 F. App'x 766, 774 (11th Cir. 2016) (per curiam) (stating "[a] debtor who believes that the discharge injunction has been violated may file a contempt action with the bankruptcy court that issued the discharge injunction, not with another court"); *but see Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 446 (1st Cir. 2000), amended on denial of reh'g (Dec. 15, 2000) (holding "a district court sitting in bankruptcy is similarly authorized to invoke its

<mark>-15-</mark>

equitable powers under § 105 when necessary to carry out the provisions of the Bankruptcy Code" (citations omitted)).

As the Court finds that Plaintiff's claim for contempt of the bankruptcy discharge order is best resolved by the bankruptcy court that issued the order, the Court exercises its power under 28 U.S.C. § 157[7] and **REFERS** this entire action to the Bankruptcy Court for the Southern District of West Virginia for further proceedings.[8] In light of this decision, the Court also **DENIES AS MOOT** Plaintiff's Motion to Compel Deposition and Extend the Deadlines (ECF No. 35), as the bankruptcy court will issue its own scheduling order, and the Court **DENIES WITHOUT PREJUDICE** Defendant 21st Mortgage Corporation's Motion to Stay pending a decision by the D.C. Circuit Court of Appeals in *ACA International v. FCC*, No. 15-1211 (D.C. Cir. July 10, 2015). ECF No. 31. If Defendant seeks to stay this matter in light of this Memorandum Opinion and Order, it should file a motion to stay in the bankruptcy court.

### IV.
### CONCLUSION

Accordingly, the Court **GRANTS, in part,** and **DENIES, in part**, Defendant 21st Mortgage Corporation's Motion to Dismiss (ECF No. 16); **DENIES AS MOOT** Plaintiff's Motion to Compel Deposition and Extend the Deadlines (ECF No. 35); **DENIES WITHOUT PREJUDICE** Defendant 21st Mortgage Corporation's Motion to Stay (ECF No. 31); and

---

[7]Section 157(a) provides "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."

[8]To be clear, the Court refers the entire action to the Bankruptcy Court for this District. As the parties have not raised any arguments as to whether any of Plaintiff's non-bankruptcy claims are preempted by the bankruptcy code, this Court makes no decision with respect to preemption.

**REFERS** this matter to the Bankruptcy Court of the Southern District of West Virginia for further proceedings.[9]

        The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

        ENTER:     September 28, 2017

        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE

---

[9] Plaintiff's bankruptcy case number is 3:01-bk-30266.